**SO ORDERED.**

**SIGNED this 18 day of May, 2012.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

BARBARA GENTRY STERRENBERG,      CHAPTER 7
                                  CASE NO. 11-08543-8-RDD
    DEBTOR

ORDER GRANTING MOTION TO DISMISS
CHAPTER 7 PROCEEDING PURSUANT TO 11 U.S.C. § 707(b)(1) OR (b)(3)

Pending before the Court is the Motion to Dismiss Chapter 7 Proceeding Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3) filed by the Bankruptcy Administrator on January 12, 2012 (the "Motion to Dismiss") and the Response to Motion to Dismiss Chapter 7 Proceeding Pursuant to Rule 707(b)(1) and (b)(3) filed by Barbara Gentry Sterrenberg (the "Debtor") on February 29, 2012 (the "Response"). A hearing was held on April 26, 2012 in Wilson, North Carolina to consider the Motion to Dismiss and the Response.

On November 8, 2011, the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). As part of her petition, the Debtor filed her Schedules, Official Form B22A-Chapter 7 Statement of Current Monthly Income and Means Test ("Form B22A"). The Debtor indicated on Form B22A that based on the initial calculation of her

monthly income a presumption of abuse did not arise. The Bankruptcy Administrator filed a statement of presumed abuse which was timely docketed on December 20, 2011.

The Debtor's schedules disclose that she has $227,253.63 of secured debts, $0.00 of priority unsecured debts, and $104,173.18 of non-priority unsecured debts. Her debts consist primarily of consumer debts. The Debtor's schedule I indicates that she receives gross monthly wages of $9,593.24. The Debtor deducts from her wages the following: $2,950.58 for payroll taxes and social security; $550.17 for insurance; $51.94 for cafeteria; $387.47 for 401(k) loan; and $4.43 for uniform. After payroll deductions the Debtor's net monthly take home pay is $5,648.65. On the means test the Debtor indicates that her current monthly income ("CMI") as defined in 11 U.S.C. § 101(10A), from her employment is $9,593.24. The Debtor has been separated from her spouse since February 2011. On line 42, the Debtor deducts $1,260.65 for a secured debt on her one-half interest in her former residence, $202.08 for a secured debt on a one-half interest in a 2005 Sea Fox Boat in the possession of her separated spouse, and $674.20 on a secured debt for a 2011 Chevrolet Camaro. The Statement of Intention filed with the petition indicates that the Debtor intends to surrender the collateral securing these debts. The separated non-debtor spouse has been making the payments on the house and the boat. The Debtor's CMI does not account for the payments that the separated spouse has been making for her benefit.

Pursuant to the Motion to Dismiss, the Bankruptcy Administrator asserts that the Debtor's case should be dismissed pursuant to 11 U.S.C. § 707(b)(1). The Bankruptcy Administrator contends that the Debtor has improperly calculated her means test, and once corrected, the case would be a presumed abuse. Further, the Bankruptcy Administrator believes that the Debtor has a projected disposable income that would require a substantial dividend to unsecured creditors in a

Chapter 13. Additionally, pursuant to the motion, the Bankruptcy Administrator argues that when taken as a whole, even if the presumption of abuse does not arise, this case should be dismissed based on the totality of the circumstances of the Debtor's financial situation pursuant to 11 U.S.C. § 707(b)(3).

The Debtor disputes that she has improperly calculated her means test, and contends that there are special circumstances that warrant her deductions.

At the hearing, counsel for the Bankruptcy Administrator requested the Court only consider the Section 707(b)(1) argument. Additionally, both the Bankruptcy Administrator and Counsel for the Debtor agreed that the main issue before the Court is whether the Debtor's deductions for debt payment as indicated on Line 42 ($1,260.65 for a secured debt on her former residence; $202.08 on a boat in the possession of her separated spouse, and $674.20 for a 2011 Chevrolet Camaro) should be allowed. If the deductions are disallowed then the Debtor's case is clearly an abuse. If the deductions are allowed then the Debtor's case is not an abuse.

Section 707(b)(1) provides that the Court may dismiss a case under Chapter 7 or, with the consent of the debtor, convert a case to Chapter 11 or 13, should the court determine that granting relief would be an abuse of the provisions of Chapter 7. To determine whether granting relief would be an abuse, a court should presume an abuse if the debtor's current monthly income reduced by certain amounts and multiplied by 60 is not less than the lesser of 25 percent of the debtor's nonpriority unsecured claims, or $7,025, whichever is greater; or $11,725. 11 U.S.C. § 707(b)(2)(A)(I). *In re Leggett*, No. 10-03383-8-RDD, 2011 WL 802806 at \*2 (Bankr. E.D.N.C. Mar. 2, 2011).

The Bankruptcy Administrator argues that the deductions taken on line 42 ($1,260.65 for a secured debt on her former residence, $202.08 on a boat in the possession of her separated spouse, and $674.20 for a 2011 Chevrolet Camaro) should be disallowed because the Debtor intends to surrender the collateral securing these debts and the separated spouse has been making the payments on the house and the boat. Therefore, the Debtor will not be making these payments going forward. The Debtor contends that the plain language of the statute allows her to deduct the payments.

The issue therefore, is whether the Debtor may claim a line 42 deduction, for payments that the Debtor does not intend to pay, secured by collateral that the Debtor does not intend to retain. This is a matter of first impression in this Court.

11 U.S.C. § 707(b)(2)(A)(iii) provides:

> [t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of - (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and - (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

Therefore, the means test allows debtors to deduct from their monthly disposable income "the total of all amounts scheduled as contractually due to each secured creditor in the 60 months following the filing of the bankruptcy case." Form B22A, Line 42.

Courts having addressed this issue have come to varying conclusions. The court in *In re Walker*, 2006 WL 1314125 (Bankr. N.D.Ga. May 1, 2006), addressed the issue of whether the Chapter 7 debtors could include in their means test calculation deductions for payments secured by collateral that the debtors intended to surrender after the bankruptcy filing. *Id.* at 2. *See also*, *In re Rudler*, 576 F.3d 37, 45 (1st Cir. 2009) (holding that a Chapter 7 debtor may deduct from his CMI

secured debt payments, regardless of whether the debtor intends to surrender the collateral corresponding to the debt); *In re Oliver*, 2006 WL 2086691 at * 3 (Bankr. D.Or. Jun. 29, 2006) (finding that the Chapter 13 debtors could include on Form B22C average payments on secured debts even when those payments would not be made under the plan). The bankruptcy court examined the language in 11 U.S.C. § 707(b)(2)(A)(iii) and determined that the phrase "scheduled as contractually due" permitted the debtor to deduct the payments even if the debtor intended to surrender the property postpetition. *Id.* at 3.

Other bankruptcy courts have found that monthly payments for secured debts may not be included in the means test calculation when the debtor intends to surrender the collateral. *In re Harris*, 353 B.R. 304, 309-310 (Bankr. E.D.Okla. Oct. 13, 2006). The court in *In re Harris*, adopted the reasoning of *In re Skaggs*, 349 B.R. 594, 599-600 (Bankr. E.D.Mo. 2006). In *Skaggs*, the bankruptcy court noted that "Congress used the phrase 'scheduled as' several times in the Bankruptcy Code to refer not to the common dictionary meaning for the word schedule (i.e. 'To plan for a certain date'), but to whether a debt is identified on a debtor's bankruptcy schedules." *Id.* at 309 (quoting *In re Skaggs*, 349 B.R. at 599-600). Applying this reasoning, the *Harris* court noted that the "means test was intended to 'ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.'" *Id.* at 309 (quoting *Hardacre*, 338 B.R. at 725 (quoting 151 CONG. REC. S2470 (March 10, 2005))). The court concluded that "monthly payments for secured debt cannot be included in the means test calculation when a debtor or debtors intend to surrender the corresponding collateral." *Id.* at 309-310.

Guided by the *Harris* decision, the court in *In re Ray*, found that the debtors were not allowed to deduct secured payments for collateral when the debtors stated their intention to

5

surrender the collateral in their Statement of Intention. *In re Ray,* 362 B.R. 680, 685 (Bankr. D.S.C. Feb. 28, 2007). The court discussed the varying authorities on the issue and noted that the deduction at issue was for "average monthly payments on account of secured debts" which is calculated by looking to the "60 months following the date of the filing of the petition." *Id.* at 684. The court found that these two phrases "are best construed as contemplating a forward-looking calculation." *Id.* at 685. The court determined that the "better construction of 'scheduled as contractually due' would consider the debtors' intention to surrender the collateral and make no future payments to the creditor." *Id.* Because the debtors indicated on their Statement of Intention, the intent to surrender the collateral and make no future payments to the creditor, the debt was not "scheduled as contractually due." *Id.* Therefore, the debtors could not deduct the "average monthly payments" from their current monthly income. *Id.* The *Ray* court noted that when considering "whether debtors are abusing chapter 7 it is proper to construe the statute in such a way as to determine whether they have an ability to repay their general unsecured creditors once they have carried out their stated intentions." *Id.*

The Fourth Circuit recently addressed the issue of whether the debtor's "projected disposable income" should take into account the debtor's intention to surrender two vehicles to her secured creditors in *Morris v. Quigley (In re Quigley)*, 673 F.3d 269 (4th Cir. 2012). The bankruptcy court held that the Chapter 13 debtor could deduct monthly payments made during the six-month period preceding the bankruptcy even though she would not in fact be required to make these payments through her plan. *Id.* at 271. The Chapter 13 trustee appealed and the district court affirmed. *Id.* Reversing the bankruptcy court and the district court, the Fourth Circuit relied on *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010), which was decided after the bankruptcy court's and district court's

6

decisions. *Id.* at 272-273. The Fourth Circuit noted that the Supreme Court in *Hamilton v. Lanning*, adopted a "forward looking approach" and held "that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 273 (quoting *Hamilton v. Lanning*, 130 S.Ct. 2462, 2478 (2010)). The debtor attempted to distinguish *Lanning,* by noting that *Lanning* involved a change in *income* where the debtor's case involved a change in *expense*. *Id.* The Fourth Circuit held, however, that the same principles articulated by the Supreme Court apply equally to both situations. *Id.*

The Supreme Court addressed the issue of "whether a [chapter 13] debtor who does not make loan or lease payments on his car may claim the deduction for vehicle-ownership costs." *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 723 (2011). In making this determination, the Supreme Court interpreted 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Court focused on the term "applicable" expense amounts. *Id.* at 724. The Court determined an "expense amount is 'applicable' within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit." *Id.* The Court held that a deduction is "appropriate" to a debtor, "only if the debtor has costs corresponding to the category covered by the table–that is, only if the debtor will incur that kind of expense during the life of the plan." *Id.* The Court noted that "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not "reasonably necessary" within the meaning of the statute." *Id.* at 725. Referencing *Hamilton v. Lanning*, the Court noted that "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" *Id.* at 725 (quoting H.R.Rep. No. 109-31, pt. 1, p.2 (2005)).

7

Although *Ransom* involved a Chapter 13 case, the same principles apply here. *In re Wilson*, 454 B.R. 155, 157 (Bankr. D.Colo. Feb. 25, 2011) (applying *Ransom* and finding that the debtor could not deduct, as "applicable monthly expense amount," the standard mortgage/rent expense, when the debtor did not pay any rent and did not have any mortgage obligation for the property where he resided). "The Supreme Court's analysis was focused on the terms of § 707(b)(2)(A)(ii)(I) and the overall purpose of the Means Test, which is obviously applicable to Chapter 7 cases as well as being incorporated in § 1325. Although the *Ransom* Court found support for its interpretation from the context of § 1325(b)(3) and that section's definition of disposable income for purposes of a Chapter 13 plan, *see id.* at 724 - 25, the Court's holding was in no way limited to Chapter 13 cases." *Id.* As such, this Court must apply the holding of *Ransom* to this case.

The holdings of *Ransom*, *Hamilton v. Lanning*, and *Morris v. Quigley*, provide clear guidance. Taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future. Applying this reasoning furthers the purpose of the means test, "which was intended to 'ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.'" *In re Harris*, 353 B.R. at 309 (quoting *Hardacre*, 338 B.R. at 725 (quoting 151 CONG. REC. S2470 (March 10, 2005)). The cases cited above holding that Chapter 7 debtors may include in their means test calculation deductions for payments secured by collateral that the debtors intended to surrender after the bankruptcy filing, were decided prior to the decisions in *Ransom*, *Hamilton v. Lanning*, and *Morris v. Quigley*. Thus, this Court's decision reflects the Fourth Circuit and Supreme Court precedent which encourages courts to apply a more case-specific forward looking approach that takes into account the Debtor's known or virtually certain future income and expenses.

Here, the Debtor deducts secured payments and intends to surrender the corresponding collateral. As the court in *Ray* noted, the best construction of "scheduled as contractually due" considers the debtor's intention to surrender the collateral and to make no future payments to the creditor. *In re Ray,* 362 B.R. at 685. The Debtor's Statement of Intention shows the debtor intends to surrender the house, boat, and Chevy Camaro. The house and boat are currently in the possession of the Debtor's separated spouse who has been making payments on these obligations. Not only does the Debtor intend to surrender the collateral, her non-filing separated spouse is making the payments. To allow the Debtor to take these secured payment deductions would be absurd and diametrically in opposition to the policy goals of the means test which Justice Kagan noted in *Ransom* are "to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 721 (2011) (emphasis in original). Looking forward, and taking into account the Debtor's actual financial situation, the Court finds that the Debtor will not be allowed to deduct such fictional secured expenses. Therefore, the deductions for debt payment as to the 2011 Chevrolet Camaro, the one-half interest in home on 1 acre lot and the one-half interest in the 2005 Sea Fox Boat are not allowed because the Debtor intends to surrender the corresponding collateral. As a result, the presumption of abuse arises pursuant to 11 U.S.C. § 707(b)(2).[1] The Debtor has

---

[1] Based on the Debtor's Amended Schedule F, the Debtor has $104,973.07 in nonpriority unsecured claims. Twenty-five percent of those claims equals $26,243.27. Therefore, because $11,725.00 is less than one quarter of the Debtor's nonpriority unsecured claims, the Debtor's disposable income (current monthly income reduced by allowed deductions) multiplied by 60 must be less than $11,725.00. According to Form B22A, the Debtor's monthly net or disposable income is $-630.74. Over 60 months, the Debtor has $-37,844.40 in disposable income. This amount is less than $11,725.00. Therefore, the Debtor indicated the presumption of abuse did not arise. The Court finds that the Debtor is not allowed deductions in the amount of $1,260.65 for a secured debt on the debtor's one-half interest in her former residence, $202.08 for a secured debt on a one-half interest in a 2005 Sea Fox Boat in the possession of her separated spouse, and $674.20 on a secured debt for a 2011 Chevrolet Camaro. Therefore, the calculation should be as

failed to rebut the presumption of abuse and the motion to dismiss is **GRANTED**. The Debtor shall have ten (10) days from the entry of this order to convert the case to a case under Chapter 13. Should the Debtor fail to convert this case within ten (10) days, the case is **DISMISSED** pursuant to § 707(b)(1).

    **SO ORDERED**.

**END OF DOCUMENT**

---

follows: the Debtor's monthly net or disposable income is $1,506.19. Over 60 months the Debtor has $90,371.40 in disposable income. This amount is greater than $11,725.00, therefore, the presumption of abuse arises in the Debtor's case.